UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT ANNABEL,

      Plaintiff,               Case No. 2:12-cv-13590
                                 District Judge Sean F. Cox
v.                                Magistrate Judge Anthony P. Patti

DANIEL HEYNS, *et al.*,

      Defendants.
_____/

## <u>REPORT AND RECOMMENDATION TO GRANT DEFENDANT SURJIT DINSA'S MOTION FOR SUMMARY JUDGMENT (DE 112)</u>

**I.**    **RECOMMENDATION**:  The Court should grant Defendant Surjit Dinsa's

motion for summary judgment and dismiss this action in its entirety.  (DE 112.)

**II.**    **REPORT**

    **A.**  **<u>Background</u>**

      Plaintiff, Robert Annabel, is a state prisoner who is proceeding without the

assistance of counsel.  Pursuant to this Court's May 29, 2015 order, (DE 108),

Plaintiff filed his amended complaint on June 16, 2015.  (DE 109.)  His amended

pleading names only Surjit Dinsa as a Defendant, and alleges that Dr. Dinsa

violated his Eighth Amendment rights by using excessive force to involuntarily

administer Prolixin and violated his Fourteenth Amendment rights by providing

false testimony at a panel hearing to determine whether the administration was

medically necessary.[1]  (DE 109 at ¶¶ 11 and 12.)  Notably, Plaintiff's amended complaint attaches a transcript of hearing testimony in which Plaintiff admitted to being bipolar, a tendency toward aggression, and an intent to harm someone.  (Id. at 8-10.)

Defendant Sujit Dinsa, M.D., a medical doctor and psychiatrist at Gus Harrison Correctional facility, filed the instant motion on September 16, 2015. (DE 113.)  He asserts that he is entitled to summary judgment on two bases.  First, as to Plaintiff's Eighth Amendment claim, he contends that the involuntary administration of Prolixin was appropriate and based on sound medical judgment. As evidence, he provides a portion of Plaintiff's medical record detailing an apparent downswing in Plaintiff's moods and ability to cope beginning in late January of 2012.  (DE 114.)  Second, as to Plaintiff's Fourteenth Amendment

---

[1] Plaintiff named eleven Defendants in his initial complaint.  To date, there are three remaining defendants on the docket— Surjit Dinsa, Tim Kipp and David Gedernalik.  Plaintiff apparently took to heart Magistrate Judge Komives' prior finding that his proposed amended claims against any Defendants other than Defendant Dinsa would be futile (DE 82 at 3-5) and his  amended complaint does not include Tim Kipp or David Gedernalik.  Pursuant to the local rules, "[a]ny amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must, except by leave of court, reproduce the entire pleading as amended, and may not incorporate any prior pleading by reference."  E.D. Mich. LR 15.1. Applying the foregoing, the Court cannot incorporate by reference Plaintiff's previous complaint and attendant allegations against Kipp and Gedernalik, even if he had asked.  As such, I recommend that the Court terminate Kipp and Gedernalik as Defendants and dismiss Plaintiff's claims against them with prejudice.

claims, Defendant argues that Plaintiff's rights under the Due Process clause were not violated because the forced medication was in his best interest, was reviewed by an independent panel, and Plaintiff was able to capably argue before the panel.

Exhibit 1 contains Plaintiff's medical records from the Bureau of Health Care Services beginning on January 31, 2012 and ending on February 29, 2012. (DE 114.)  On January 31, 2012, Defendant notes that Plaintiff "refused to see me today," that he was "more paranoid, thinking that we are planning to hurt him," and had "mentioned to more than one person that he wants to hurt me."  (Id. at 3.) On February 4, 2012, Defendant notes that Plaintiff received a ticket for assault and battery on a member of staff, and assesses his Global Assessment Functioning score as 40.[2]  (Id at 4.)  The assault and battery ticket resulted from an incident in

---

[2] The GAF scale was used to report a clinician's judgment of an individual's overall level of functioning.  Clinicians selected a specific GAF score within the ten-point range by evaluating whether the individual was functioning at the higher or lower end of the range.  *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR).  A GAF score of 31-40 was indicative of "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgement, thinking, or mood (e.g., depressed man avoids friends, neglect family, and is unable to work, child frequently beats up younger children, is defiant at home, and is failing at school).  DSM-IV-TR at 34. However, "the most recent version of the DSM does not include a GAF rating for assessment of mental disorders."  *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL 1328277, at *10 (E.D. Mich. Mar. 28, 2014).

which Plaintiff tried to "incite a riot in 5-block" by encouraging other prisoners to "create more disturbances to break these cops up." (Id.) In addition, on the same day, Plaintiff "became assaultive and combative" toward a staff member. (Id. at 7.) The record also contains a note that Plaintiff had been "refusing some of his psychotropic medications." (Id. at 5.)

Plaintiff opposes the motion. He contends that a genuine issue of material fact remains because he disputes the evidence provided by Defendant. Namely, he asserts that he was not provided with the sealed exhibit containing his medical records (DE 114) and therefore contests the information provided therein. According to Plaintiff, there is no evidence that he refused to take medicine or "cheeked" his medicine. Instead, he contends that Defendant first reduced his dosage and then forcibly administered the medication merely as a retaliatory measure. He provides an affidavit in which he avers that he never consented to a reduced dosage of lithium carbonate or Wellbutrin, that he did not refuse to take medication and instead grieved the medication reduction, and that Defendant had no first-hand knowledge of whether he refused medication. (DE 118, ¶¶ 2, 3, and 5.)

In reply, Defendant provides correspondence with Plaintiff demonstrating that the sealed exhibit containing Plaintiff's medical records was mailed to him on

September 29, 2015.  (DE 121-1.)  In addition, Defendant provides an affidavit

from his counsel attesting that Plaintiff was "served (by U.S. Mail) with medical

records marked as Exhibit 1 (filed under seal) to Defendant Dinsa's Motion for

Summary Judgment, as is evidenced by the correspondence of counsel attached as

Exhibit 1 to Defendant Dinsa's Reply."  (DE 121-1 at 5, ¶ 2.)

### B. **Standard**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

## C.  <u>Discussion</u>

I will consider each of Defendant's arguments in turn.

### 1.  <u>Plaintiff's Eighth Amendment Claim</u>

#### a.  **Deliberate Indifference**

Plaintiff's Eighth Amendment claim asserts that Defendant Dinsa used "excessive force of Prolixin injections where less forceful alternatives were available but Defendant knowingly disregarded." (DE 109 at ¶11.) The Eighth Amendment "prohibits conduct by prison officials that involves the 'unnecessary and wanton infliction of pain.'" *Weatherspoon v. Choi*, No. 1:14-cv-707, 2015 WL 1282263, at *5 (W.D. Mich. Mar. 20, 2015) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)). "The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment— constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976)).

Here, however, Plaintiff does not specifically allege deliberate indifference, but does allege in both his pleadings and his motion response that Defendant improperly lowered his dosages of lithium and Wellbutrin "without his consent." (DE 109 at ¶ 3, DE 118 at 11.) To that end, where the plaintiff has received some medical treatment but disagrees with the level of care provided, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 527 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 944 (6th Cir.

7

2010) (noting that "courts are generally reluctant to second guess the medical judgment of prison medical officials"); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) ("When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation").  In such a circumstance, "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made," but instead should "make certain that professional judgment in fact was exercised."  *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982) (internal citations omitted).  Here, Plaintiff has not presented any evidence to demonstrate that Defendant failed to use professional judgment.  He does, however, provide several grievances he filed complaining about the alleged reduction.

The Step 1 response dismissing the grievance is as follows:

> The doctor is licensed in the State of Michigan to prescribe medication. *The medication had been [at] the same level since at least June 2011.*  The prisoner has been able to talk with provider about his medication per policy.

(DE 118 at 25) (emphasis added.)  The grievance was also denied at Steps 2 and 3, with a note that "[a]ll relevant information within the electronic medical record has been reviewed" and that Plaintiff's "failure to agree with the clinical judgment of the [Qualified Mental Health Professional] does not provide substantiation to his claim."  (Id. at 27.)  Likewise, his disagreement with the opinion of his doctor,

8

without more, does not allow the Court to second-guess Defendant's professional judgment, if in fact the dosages had been reduced at all.  Similarly, Plaintiff's assertion that Defendant should have used some "less forceful" alternative to involuntary administration is merely a disagreement with Defendant's choice of treatment and is therefore not actionable by this Court. *See Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (Deliberate indifference is not shown where "alternative procedures might have better addressed [a prisoner's] particular needs."); *Anger v. Gingell*, No. 12-14980, 2014 WL 988989, *5 (E.D. Mich. Mar. 13, 2014) (Goldsmith, J., accepting and adopting recommendation of Whalen, M.J.) ("Mr. Anger may disagree with Dr. Co's diagnosis and his choice of treatment, but mere disagreement does not equate to deliberate indifference."); *Driver v. Kelso*, No. 2:11-cv-2397 EFBP 2012 WL 3277080, at *4 (E.D. Cal. Aug. 9, 2012) ("Allegations that a defendant "erroneously" prescribed a drug to which plaintiff was allergic fail to show that the defendant acted with the requisite deliberate indifference for an Eighth Amendment claim.").

### b.    Excessive Force

Plaintiff identifies excessive force as the gravamen of his Eighth Amendment claim.  (DE 118 at 10.)  This too must fail.  A post-conviction excessive force claim is raised "'exclusively under the Eighth Amendment's cruel and unusual punishment clause.'"  *Richmond v. Settles*, 450 F. App'x 448, 453 (6th

Cir. 2011) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).

Contrary to Plaintiff's argument that excessive force claims are analyzed solely

under an "objective reasonableness" standard (DE 118 at 10), such a claim

includes both an objective and a subjective component: the official "must have

acted with a sufficiently culpable state of mind, and the alleged wrongdoing must

be objectively harmful enough to establish a constitutional violation." *Id.* (citing

*Hudson v. McMillian*, 502 U.S. 1, 8 (1992)). To meet the subjective component,

the plaintiff must demonstrate that the defendant acted "maliciously and

sadistically for the very purpose of causing harm," and not "in a good faith effort

to maintain order or restore discipline." *Hudson*, 502 U.S. at 6. As to the objective

component, courts consider a variety of factors including: 1) the extent of the

injury suffered; 2) the need for the application of force, 3) the relationship between

the need and the amount of force used; 4) the threat reasonably perceived by the

prison official; 5) and any efforts made to temper the severity of the forceful

response. *Richmond*, 450 F. App'x at 453.

Here, Defendant has provided an extensive medical record documenting

Plaintiff's downward spiral, beginning on January 31, 2012 and ending after the

forcible administration of Prolixin. (DE 114.)[3] Specifically, the medical records

---

[3] Plaintiff avers that he did not receive a copy of his medical record, which, upon
motion, was docketed as a sealed exhibit. (DE 118 at 23, ¶ 12.) Defendant,
however, provides the cover letter to Plaintiff indicating that the exhibit was

indicate both that Plaintiff was determined to be a threat to himself and others and that he was refusing to take his medication. For example, on January 31, 2012, Plaintiff expressed a desire to hurt Defendant. (DE 113 at 3.) On February 4, 2012 he was cited for assaulting and battering a staff member (Id. at 7), and two days later he received a mental health evaluation specifically noting that he was a threat to himself and others (Id. at 11). There are multiple instance in the record of Plaintiff refusing to take his medication or "cheeking" the medication in order to avoid its ingestion. (Id. at 5, 7, 19, 22, 25, and 28.) In addition, Plaintiff assaulted a staff member and attempted to incite a riot in his cell block on February 4, 2012. (DE 114 at 5 and 7.) After receiving the injections, Plaintiff exhibited "no signs of psychosis" or mania, and was described as "a lot calmer as compared to a few weeks ago." (Id. at 33-34.) These records indisputably demonstrate both that Defendant did not order the involuntary administration of Prolixin maliciously or sadistically, but instead as part of providing Plaintiff with mental health treatment and in an effort to restore order to the institution.

---

mailed to him on September 29, 2015, along with an affidavit attesting to its mailing. (DE 121-1 at 3 and 6.) Plaintiff's sworn statement seems consistent with this timeline, stating that on October 5, 2015 he "received documents from Dr. Dinsa's attorney purporting to be Exhibit 1" but which he "cannot verify as such or the full pages of that Exhibit." (DE 118 at 23, ¶ 12.) Plaintiff's response, while referring to the "ex parte medical records" also seems to indicate that he received Exhibit 1, and actually discusses them. (Id. at 10, 22-23.) Accordingly, although Plaintiff seems to disagree with the information contained therein, his argument that he did not receive Exhibit 1 is without merit.

As to the objective component, Plaintiff has not demonstrated that Defendant's alleged wrongdoing was objectively harmful enough to establish a constitutional violation.  As a preliminary matter, Plaintiff was not *physically harmed* by the administration of Prolixin.  Instead, pursuant to his medical records, his mental health condition *improved* after the treatment.  (DE 114 at 33-34.) Additionally, the need for the application of force was one made as a result of Plaintiff's increasingly erratic behavior and failure to take his medication. According to the medical records, the relationship between the need to use force and the amount of force used weighs in Defendant's favor, as a limited-time involuntary administration of Prolixin, which was approved by the MDOC's hearing committee, is not excessive in relation to the behaviors exhibited by Plaintiff.  *See Kramer v. Wilkinson*, 302 F. App'x 396, 401 (6th Cir. 2008) (concluding that an inmate's disagreement over the involuntary administration of lithium was not sufficient to violate the Eighth Amendment, even where the administration potentially posed a risk of kidney failure).  As to the threat reasonably perceived by the prison official, Plaintiff had recently committed battery on prison staff and had threatened Defendant.

Plaintiff, however, disputes the authenticity of the medical records submitted in Exhibit 1.  Because of this dispute, he asserts that there remains a genuine dispute of material fact as to whether he engaged in behavior necessitating the use

12

of force to administer his medication.  In support of this position, he provides his

own affidavit in which he avers that he did not refuse to take his medication and

that he never "cheeked" his medication.  (DE 118 at 22-23.)  He also points out

that the medical records in Exhibit 1 demonstrate that he was refusing non-

psychotropic medications such as a mineral supplement and an antihistamine.  (Id.)

However, his sworn statements are contradicted by his medical record, which

clearly evidences that he had "been refusing some of his psychotropic

medications" (DE 114 at 5, 7) and was "refusing to take his oral meds," which

included Wellbutrin and Lithium (Id. at 24-25).[4]  The records also refer to Plaintiff

"cheeking" his dose of Wellbutrin on February 16, 2012.  (Id. at 28.)

Plaintiff's disagreement with the information provided in the medical

records is not sufficient to create a genuine dispute of material fact.  "Where the

record taken as a whole could not lead a rational trier of fact to find for the

nonmoving party, there is no genuine issue for trial."  *Scott v. Harris*, 550 U.S.

372, 380 (2007).  Instead, "[w]hen opposing parties tell two different stories, one

of which is blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes of ruling

on a motion for summary judgment."  *Id. (see also White v. Georgia*, 380 F. App'x

---

[4] Additionally, Plaintiff himself stated at the February 29, 2012 hearing committee
meeting that he was prescribed the antihistamine (Benadryl) "for stress and
anxiety," which means that his refusal to take the medication necessarily
implicated his mental health treatment.  (DE 109 at 8.)

796, 798 (11th Cir. 2010) (concluding that the plaintiff's version of facts were contradicted by the medical records such that there was no genuine dispute of material facts).  This is so because even though facts in a summary judgment motion "must be reviewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  *Scott*, 550 U.S. at 380.  Indeed, an opponent of a motion under Rule 56 must "do more than simply show that there is some metaphysical doubt as to the material facts . . . ."  *Matsushita*, 475 U.S. 574, 586-87.

As such, the Court's responsibility here is to determine if the record blatantly contradicts Plaintiff's story.  I conclude that it does.  First, Plaintiff's efforts to contest the medical records as unauthenticated are unavailing. Under the Federal Rules of Evidence, a proponent of an item of evidence must authenticate that item by producing "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Medical records can be authenticated by "affidavit or other evidence."  *Shannon v. Advance Stores Co.*, No. 3:08-cv-940, 2009 WL 2767039, at **4-5 (M.D. Tenn. Aug. 27, 2009).

Here, Defendant's initial motion did not address the authentication of the records.  Accordingly, I ordered supplemental briefing from both parties on March 28, 2016.  (DE 124.)  Defendant and Plaintiff both filed timely supplements.  (DE 125 and 126.)  In Defendant's supplemental filing, he provides the affidavit of

14

Kevin Towns, the MDOC Health Manager at the Ionia Correctional Facility, who attests that the 39 pages of medical records provided with Defendants' motion for summary judgment are true and accurate copies of the original records. (DE 125-6 at ¶ 3.) Defendant also provides an authorization for disclosure of health information, allowing the release of the records for the purposes of this case, which was signed by Plaintiff on November 21, 2013. (DE 125-3.)

In response to this evidence, Plaintiff maintains that the medical records have been tampered with and provides his own statements, sworn under the penalty of perjury, attesting to the same.[5] (DE 126.) Specifically, he asserts that the medical records do not reflect his complaints about the reduction in his lithium carbonate dosage, that his failure to take his dosage of ferrous sulfate has nothing to do with his mental health treatment, and the fact that a subsequent physician discontinued Plaintiff's dose of Prolixin. (Id. at 5-7, ¶¶ 2, 3, and 8.)

As such, there appears to be a "situation where the sworn affidavits of each party contradict one another about underlying events which are relevant to the claim. *Berryman v. Regiler*, 47 F.3d 1167, at *3 (table) (6th Cir. 1995). In the *Berryman* case, the Sixth Circuit found a genuine dispute of material fact where

---

[5] Plaintiff provides a verification stating that he declares "under the penalty of perjury" that the facts outlined in the document are true. (DE 126 at 8.) Such a declaration is sufficient pursuant to 28 U.S.C. § 1746 and the Court may consider the evidence attested to for summary judgment purposes. *Cook v. Caruso*, 531 F. App'x 554, 561 (6th Cir. 2013).

the plaintiff's sworn affidavits averring that his medical records were forgeries contradicted the defendants' affidavits attesting that the medical records were submitted in good faith.  *Id.*  In that Eighth Amendment case, the matters disputed were directly material to the plaintiff's claim that he had been denied medical treatment.

Here, however, even leaving aside the information to which Plaintiff takes issue, there is no genuine dispute of material fact.  For example, Plaintiff vociferously disputes the medical records that show he was "cheeking" his Wellbutrin and asserts that his refusal to take his ferrous sulfate was irrelevant to his mental health treatment.  (DE 118 at 23, ¶ 13 and DE 126 at 6, ¶ 3.)  As noted above, however, the rest of the medical record contains sufficient evidence to support Defendant's assertions that he involuntarily administered Prolixin as part of providing Plaintiff with mental health treatment.  Specifically, Plaintiff does not dispute the portions of his medical records that indicate that he threatened to hurt Defendant, that he was cited for assaulting and battering a staff member, that he attempted to start a riot in his cell block, or that he was calmer and exhibited no signs of psychosis or mania after receiving the Prolixin.  Nor does he dispute his own testimony at the administrative hearing that he intended to harm someone (DE 109 at 9-10.)  *See Corsetti v. Tessmer*, 41 F. App'x 753, 755-56 (6th Cir. 2002) (concluding that "although [the plaintiff] disputes the medial records," defendants

16

were entitled to summary judgment where the plaintiff's other testimony was consistent with the records.).

Moreover, the information in properly authenticated medical records can contradict a party's testimony such that no genuine dispute of material fact remains. *See White*, 380 F. App'x 798; *Williams v. Mattson*, 221 F.3d 1337, at *1 (6th Cir. 2000) (affirming a grant of summary judgment despite the plaintiff disputing medical records where "defendants' affidavits and [the plaintiff's] medical records show that he was treated for each of the conditions which he contends were ignored."). As addressed above and below, the medical records provided by Defendant document Plaintiff's increasing mental health problems, instability, threatening behavior, and an intent to harm someone, in addition to his refusal to take his medication. The medical records were completed by Defendant, Angela L. Holman, LLMSW, David Gendernalik, M.D., and Roseann M. Jones, RN. Plaintiff tries to get around this well-documented history by vaguely claiming that this group of individuals allegedly conspired against him to provide incorrect information in his medical record in order to retaliate against him in some way. Nothing in this record supports a reasonable inference to that effect. *See, e.g., Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 132 (6th Cir. 2014) ("in disposing of a motion for summary judgment, a court need draw only *reasonable* inferences in favor of the nonmoving party. . . ."). Nor could the record taken as a whole lead a

17

rational trier of fact to find in Plaintiff's favor on this issue.  *See Ratkov v. Roggenbuck*, 134 F.3d 372, at *2 (6th Cir. 1997) (concluding that the "alleged inaccuracy" in the plaintiff's medical records "did not amount to a constitutional injury" and that "vague and conclusory" conspiracy claims could not survive a motion to dismiss).  Accordingly, I conclude that Defendant's motion should be granted with respect to Plaintiff's Eighth Amendment excessive force claim.

### 2.    Plaintiff's Fourteenth Amendment Claim

Plaintiff asserts that Defendant violated his rights under the Fourteenth Amendment by providing false testimony at the February 29, 2012 panel hearing, at which the Hearing Committee determined that Defendant's decision to forcibly administer Prolixin was medically necessary.  Although Plaintiff does not address in his complaint the potential due process issues associated with the involuntary administration itself, Defendant discusses this issue extensively in his briefing.  As the issues are somewhat related, I will address both.

### a.    Plaintiff's Liberty Interest in the Unwanted Administration of Drugs

Inmates have a liberty interest in avoiding the unwanted administration of antipsychotic drugs.  *Washington v. Harper*, 494 U.S. 210, 221-22 (1990). However, the Due Process clause does not prohibit the involuntary treatment with antipsychotic drugs done to "reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others."  *Id.* at 236.  "Thus, the

18

state may administer involuntary medical treatment to an institutionalized mental patient if that patient poses a threat to himself or other patients, or if treatment is in that patient's medical interest." *Nobel v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996) (citing *Harper* at 227.) The Sixth Circuit has found that an inmate's "naked assertions that he does not wish to be medicated fails to demonstrate that the medical choice is not reasonably related to legitimate penological interests." *Kramer*, 302 F. App'x at 400 (internal quotations omitted).

Here, Plaintiff has done no more than nakedly assert that he did not wish to be medicated with Prolixin; he instead preferred a specific dosage of lithium and Wellbutrin. He provides no medical evidence or opinions in support of his preferred course of treatment, and even if he had, it would still amount to nothing more than an issue of medical judgment, not deliberate indifference/excessive force. Where a prisoner merely disagrees with the treatment he or she received, the defendant is entitled to summary judgment. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999); *see also Robbins v. Black*, 351 F. App'x 58, 62 (6th Cir. 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation.").

Defendant, on the other hand, has provided Plaintiff's medical record before the forced administration of Prolixin, demonstrating Plaintiff's increasingly difficult behavior, threats, and violence, in addition to his refusal to take his

medication.  Of particular note, on February 4, 2012, Plaintiff received a ticket for "trying to incite a riot in 5-block, by stating/screaming 'Come on guys [names of two prisoners], you guys need to create more disturbances to break these cops up." (DE 114 at 5.)  The same day, he received a ticket for assault and battery on a member of prison staff.  (Id. at 7.)  He also refused to see Defendant for treatment and "mentioned to more than one person that he wants to hurt [Defendant]."  (Id. at 3.)  Moreover, his medical record contains several specific notations that he represented a threat to himself and others.  (Id. at 6, 9, 11, and 12.)  Even Plaintiff admits in his amended complaint that he "suffered a mental breakdown with violent and self-injurious breakdowns."  (DE 109 at ¶ 5.)  Likewise, in his response, he acknowledges a "psychotic breakdown," a "problem" caused by having too low a dosage of lithium carbonate, and "poor behavior . . . due to lithium carbonate reduction . . . ."  (DE 118 at 5, 11, and 13.)  Such activity demonstrates that the decision to forcibly medicate Plaintiff was reasonably related to legitimate penological interest of reducing danger to Plaintiff and others. As such, any due process claim on this basis must fail.

### b.    Plaintiff's Administrative Hearing

Pursuant to Michigan law, prisoners who refuse treatment are afforded a hearing, at which they are entitled to the following:

> (a) Attendance at the hearing, and if the prisoner has a guardian of the person, the guardian's attendance at the hearing.

20

(b) Presentation of evidence, including witnesses, who may be family members, and cross-examination of witnesses, unless the hearing committee finds that the presentation, confrontation, or cross-examination would present a serious threat to the order and security of the facility or the safety of the prisoner or others.

(c) Assistance of 1 of the following persons designated by the director of the corrections mental health program[.][6]

Mich. Comp. Laws § 330.303c; *see also* § 330.303a.  The hearing committee is comprised of a psychiatrist, psychologist, and other licensed mental health professional who have no involvement in the prisoner's treatment or diagnosis.  *Id.* at § 330.303c(1).  Plaintiff does not dispute that he was afforded all of the above, but takes issue with Defendant's testimony that he could not recall whether he had lowered Plaintiff's dosages of lithium and Wellbutrin.  He provided a transcript of the hearing as an exhibit to his amended complaint, which in relevant part reads:

Robert Annabel: Question number two, on December 2011, you lowered my per diem Lithium Carbonate dosage from 1350 mg to 900 mg against my repeated protests, correct?

Dr. Dinsa:  I have to check. I don't remember.

Robert Annabel: Ok, I actually wrote a grievance on that but.  Three, and a few weeks after that you lowered my per diem Wellbutrin dosage from 400 to 300 mg against my repeated protests, correct?

Dr. Dinsa: Again, I have to check it. I don't remember.

---

[6] Inmates can receive assistance from a recipient rights advisor or a disinterested mental health provider.

(DE 109 at 7.)  According to Plaintiff, this testimony—or lack thereof—misled the hearing committee into approving the forced administration of Prolixin.

Defendant provides an affidavit in which he swears that the responses he provided to Plaintiff were truthful, accurate, and made in good faith, and the Court has no reason to believe otherwise.  (DE 113 at 26, ¶ 8.)  Just as importantly, in the unlikely event that the responses were blatant lies, there is nothing in the hearing testimony or elsewhere in the record to indicate that the committee materially based its decision on those responses.  Plaintiff does not dispute the other information provided by Defendant at the hearing, including a history of bipolar disorder, the "two incidents of serious assaults and self-injurious behaviors in the last two months," the fact that he "manufactured a weapon and attempted to use it against an officer" on January 30, 2012, and Plaintiff's increasing feelings of hopelessness and paranoia.  (DE 109 at 6, 8.)  Indeed, Plaintiff testified to these same issues himself, noting that he had been feeling hopeless and was doing better after the administration of Prolixin.  Plaintiff also testified to the following:

> Robert Annabel: Well, my intention was basically just to go all out because nothing really mattered, I was going to be in prison forever. It doesn't matter one way what happened.  You know what I'm saying, it was basic and complete depression, the hopelessness. I get to that point, you know, I tend to get aggressive.
>
> Dr. Polavarapu: And your intention was to harm somebody?
>
> Robert Annabel: Yes.

22

(DE 109 at 9-10.)  Accordingly, Plaintiff has presented no evidence to demonstrate that Defendant's statements were untrue, or that they in any way influenced the hearing committee's ultimate decision.  On the record before the Court, it is just as likely, if not more so, that Plaintiff's own sworn admissions led the committee to decide as it did.  As such, Plaintiff's Fourteenth Amendment claim must fail.

## III.    CONCLUSION

The Court should grant Defendant's motion for summary judgment in its entirety.  (DE 112.)  In addition, the Court should dismiss any claims Plaintiff intended to bring against Tim Kipp and David Gedernalik because his amended complaint contains no mention of those individuals.

## IV.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 26, 2016                    s/Anthony P. Patti
                                        Anthony P. Patti
                                        UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on July 26, 2016, electronically and/or by U.S. Mail.

                                        s/Michael Williams
                                        Case Manager for the
                                        Honorable Anthony P. Patti

24